**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TROY J. MAYER,**<br>**Petitioner,**<br><br>**v.**<br><br>**PA. ATTY GEN. TOM CORBETT, et al.**<br>**Respondents.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL CASE**<br>**NO. 05-6017** |

**MEMORANDUM OPINION**

**RUFE, J.** **JANUARY 16, 2014**

Before the Court are Petitioner Troy Mayer's objections to Magistrate Judge Strawbridge's Report and Recommendation ("R&R") that this Court deny his petition for a writ of habeas corpus and decline Mayer's request for a Certificate of Appealability. After an independent and careful review of the record in this case, the objections are overruled, and the R&R is approved and adopted.

## I. Background

Judge Strawbridge's careful and thorough R&R discusses in detail the factual and procedural background to this case. This Court adopts Judge Strawbridge's statement of the case and provides the following summary to contextualize this Memorandum Opinion.

In brief, Mayer and Nate Copeland went to Ricky White's house one evening to buy drugs. Mayer intended to trade two diamonds and a diamond ring for some marijuana. White had a gun that was brought out during the course of the evening. One of the diamonds went missing, and an argument broke out over who had it. The argument turned violent, and Copeland was shot in the head, White in the arm. Mayer ran out of the house with the gun and persuaded a couple sitting in a nearby car to drive him to his cousins' house. At his cousins' house, Mayer asked the

driver if he could have an Eagles cap that was in the back seat of the car. When the driver said yes, Mayer covered his hand and the gun with the cap and went inside the house.

These facts formed the basis for Mayer's convictions of first degree murder (of Copeland); aggravated assault (of White); possession of an instrument of crime (the gun); kidnapping (of the couple in the car); and robbery (of the cap). At trial, Mayer's defense was that White had shot Copeland, after which Mayer secured the gun and shot White in self-defense.

There followed post-trial hearings, appeals, collateral review under the Post Conviction Hearing Act ("PCHA," later supplanted by the Post Conviction Review Act, "PCRA"), appeal therefrom, a federal habeas petition, and a second PCHA review. Mayer lost in all of these proceedings.

Then came his PCRA petition before Judge Lisa Richette of the Court of Common Pleas of Philadelphia, during which she took evidence in a few hearings scattered between 1997 and 2002. At the end of these hearings, on July 18, 2002, she issued a brief opinion granting Mayer a new trial, and she docketed an order that stated, "Defense motion for new trial is heard and granted, but final order stayed until [Commonwealth] appeal filed. Order not to be signed."[1] Then, on October 15, 2002, she entered an order that reads, "I hereby certify, that on the 15th day of October A.D. 2002 the Defense's motion for a new trial was granted as of July 18, 2K2. Final order was stayed until the Commonwealth's appeal, no Commonwealth appeal has been filed. Therefore the Order remains."[2]

The (jurisdictional) time to appeal a final order of a PCRA court is thirty days. The Commonwealth appealed Judge Richette's disposition less than thirty days after October 15,

[1] Doc. No. 52-11 at 4.

[2] *Id*.

2002, but more than thirty days after July 18, 2002. Therefore, it was debated whether the Superior Court (which hears appeals from the PCRA court) had jurisdiction to hear the Commonwealth's appeal. The Superior Court held that it had "no clear idea what the PCRA court and counsel were doing or thought they were doing" and that it had "never seen anything quite like it before, but . . . having entered a final order on October 15, 2002, the PCRA court had absolutely no authority to back date the order to July 18, 2002."[3] The Superior Court then held that the PCRA court was without jurisdiction to grant relief to Mayer because his third PCRA petition was not timely.

After the Pennsylvania Supreme court denied allocatur from the Superior Court's reversal, Mayer sought leave from the Third Circuit to file a second federal habeas petition. The Third Circuit ruled that Mayer did not need its permission but noted that Mayer's claims "may not be cognizable."[4] Thereafter, Mayer petitioned this Court for a writ of habeas corpus;[5] this Memorandum Opinion resolves Mayer's petition.

## II. Discussion

### *A. Introduction*

Mayer challenges his confinement on the grounds that his post-conviction proceedings were unconstitutional and that he is actually innocent of the homicide for which he is incarcerated. Mayer objects to the R&R's determination that Third Circuit case law renders the post-conviction claims not cognizable on habeas. Because the R&R correctly ruled on this subject, Mayer's objection will be overruled. Mayer does not object to the R&R's ruling on his

---

[3] *Id.* at 4–5.

[4] *In re: Troy J. Mayer*, Nos. 05-2300 & 05-3945 (3d Cir. Oct. 17, 2005).

[5] The petition was assigned to Magistrate Judge Strawbridge, who issued an R&R to which Mayer has objected.

actual innocence claim, but this Court will include herein a discussion of the standard of review of a claim of actual innocence in the unusual situation presented here where the last state court to address the question whether a petitioner is innocent found that he was.

*B. Claims of Post-Conviction Error*

Mayer argues that the Superior Court of Pennsylvania lacked jurisdiction to hear the Commonwealth's appeal from Judge Richette's PCRA ruling. He further argues that a person confined because a state court acted without jurisdiction may challenge his incarceration in a habeas action, regardless of whether the court without jurisdiction tried the case or sat on direct or collateral review of the conviction. The Commonwealth responds that claims of error on state collateral review are not cognizable in federal habeas actions and that Mayer is merely trying to make a non-cognizable challenge reviewable by labelling the challenge "jurisdictional."

For the proposition that jurisdictional errors are remediable on habeas, Mayer cites *Frank v. Mangum*, which states, among other things, that "the writ of habeas corpus will lie only in case the judgment under which the prisoner is detained is shown to be absolutely void for want of jurisdiction in the court that pronounced it."[6] In *Frank*, the Supreme Court was reviewing alleged constitutional errors at trial, so the case provides little support for Mayer's challenges to his post-conviction proceedings. None of the cases that Mayer cites squarely holds that jurisdictional errors in collateral review proceedings are cognizable in federal habeas courts.

Mayer urges that jurisdictional challenges are different from other claims that may be reviewed on habeas and that federal habeas courts may always hear challenges to state courts' jurisdictional holdings. But in support of this argument, he cites cases from 1915 and before,[7] a

[6] 237 U.S. 309, 327 (1915).

[7] Petitioner relies on *Frank*; *Harkrader v. Wadley*, 172 U.S. 148 (1898); and *In re Eckart*, 166 U.S. 481 (1897). He also cites Justice Thomas's dissent in *Skinner v. Switzer*, 131 S. Ct. 1289, 1300 (2011).

time when "lack of jurisdiction" was often held to be the *only* cognizable ground for habeas relief.[8] Accordingly, the concept of jurisdiction was quite different from the way that word is used in contemporary legal writing.[9] Today, "jurisdiction" means power to adjudicate a dispute and is classified as either subject-matter jurisdiction or personal (or *in rem*) jurisdiction. In the early twentieth century and before, "jurisdiction" meant a court's power more broadly, so a serious error by a court that undeniably had what we would call today subject-matter and personal jurisdiction could nonetheless be said to be beyond or to divest a court of "jurisdiction" in the older sense of the word.[10] Contrary to Mayer's objections, jurisdictional errors are not special, they only seem that way because a century ago the writ of habeas corpus had a relatively narrow scope.

The Third Circuit has held that constitutional challenges to post-conviction proceedings (other than direct appeal) are not cognizable on habeas.[11] This Court further holds that jurisdictional claims do not unlock the courthouse door to allegations of post-conviction error. Because the meaning of jurisdiction has changed, this Court will not rely on broad pronouncements from a bygone era about a court's power to review jurisdictional challenges in habeas proceedings. Mayer has not made a convincing argument that jurisdictional errors

---

[8] Richard H. Fallon et al., eds., *Hart & Wechsler's The Federal Courts and the Federal System* 1221 (6th ed. 2009).

[9] *E.g.*, *Fay v. Noia*, 372 U.S. 391, 450–51 (1963) (Harlan, J. dissenting) ("The concept of jurisdiction . . . was subjected to considerable strain during this period, and the strain was not lessened by the fact that until the latter part of the last century, federal criminal convictions were not generally reviewable by the Supreme Court.").

[10] *E.g.*, *Frank*, 237 U.S. at 347 (1915) (Holmes, J. dissenting) ("The loss of jurisdiction is not general, but particular, and proceeds [in *Frank*] from the control of a hostile influence.").

[11] *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004) ("[A]lleged errors in collateral proceedings . . . are not a proper basis for habeas relief from the original conviction."); *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("[W]hat occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation."); *Thomas v. Miner*, 317 F. App'x 113, 115 (3d Cir. 2008); *Grundy v. Pennsylvania*, 248 F. App'x 448, 451 n.2 (3d Cir. 2007); *see also Word v. Lord*, 648 F.3d 129, 131 (2d Cir. 2011) (collecting cases).

occurring during state collateral review are cognizable despite the Third Circuit's clear rulings that deficiencies in such proceedings cannot be reviewed by federal habeas courts.

Therefore, Mayer's objection to the R&R is overruled.

*B. Actual Innocence*

Mayer claims his confinement violates the Constitution because he is actually innocent of the crime of which he was convicted. This is known as a "freestanding" claim of actual innocence rather than a "gateway" claim that allows an innocent petitioner to present a defaulted argument that his trial was constitutionally flawed.[12] The R&R, like many courts before it, assumed without deciding that a freestanding actual innocence claim was cognizable in a habeas action. This Court will follow the R&R in that respect. The R&R further held that Mayer has fallen far short of sustaining the burden of proof he would have to bear to prevail on that claim. This Court agrees and reaches its ruling in part based on an analysis of the interaction between a freestanding innocence claim and 28 U.S.C. § 2254, the federal habeas statute, modified in important respects by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

Under AEDPA, a fact found by a state court is presumed correct, and a petitioner can only rebut that presumption with clear and convincing evidence.[13] To prevail on a freestanding innocence claim (if one exists), the petitioner bears an even higher burden of proof than the one enumerated in the gateway innocence cases that require the petitioner to demonstrate "that more

[12] *Schlup v. Delo* neatly explains the difference between these kinds of claims: "In *Herrera* [*v. Collins*, 506 U.S. 390 (1993),] (on the assumption that petitioner's claim was, in principle, legally well founded), the evidence of innocence would have had to be strong enough to make his execution 'constitutionally intolerable' *even if* his conviction was the product of a fair trial. For Schlup, the evidence must establish sufficient doubt about his guilt to justify the conclusion that his execution would be a miscarriage of justice *unless* his conviction was the product of a fair trial." 513 U.S. 298, 316 (1995).

[13] 28 U.S.C. § 2254(e)(1).

likely than not any reasonable juror would have reasonable doubt."[14] Ordinarily if a petitioner meets that standard, which the Third Circuit has called "supremely high,"[15] he will necessarily surpass the requirement of 2254(e) that he rebut by clear and convincing evidence the presumption of correctness adhering to state court factual determinations.

Here, however, at a PCRA hearing, Judge Richette held that "the nature and quality of [the] evidence [adduced at the hearing], if it had been presented at the first trial, would have compelled a different result."[16] She further held that "the defendant presented compelling evidence that the sole witness against him . . . was, in fact, the person who killed Nathanial Copeland."[17] There are thus two conflicting factual findings: Mayer is guilty according to the jury; not guilty according to the PCRA court. So the question before this Court is: To which factual finding, if any, should the Court defer in adjudicating Mayer's actual innocence claim?

Not deferring at all to the PCRA court's finding that Mayer was innocent appears in tension with the command of 28 U.S.C. § 2254(e)(1): "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." It would be inequitable and contrary to the statute's plain language to hold that federal courts only defer to facts adverse to the petitioner, and it would undermine the comity that animates federal courts' treatment of state courts as competent adjudicators of factual disputes.[18]

---

[14] *House v. Bell*, 547 U.S. 518, 538 (2006).

[15] *Sistrunk v. Rozum*, 674 F.3d 181, 192 (3d Cir. 2012).

[16] *Commonwealth v. Mayer*, No. 2334 1/1, May Term 1981, at 3 (Pa. Comm. Pl. Feb. 26, 2003).

[17] *Id.* at 2.

[18] *Ayala v. Wong*, 730 F.3d 831, 840 n.3 (9th Cir. 2013). The PCRA court's finding is relevant to this petition, because ordinarily when adjudicating habeas claims, federal courts review the factual record before the last state court to issue a reasoned opinion on the matter. *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008) ("[W]e conclude that we should review the . . . the state courts' last reasoned opinion on [the relevant] topic . . . . This

However, considering the Supreme Court's cases on actual innocence, [19] this Court holds that despite the statute's language 2254(e) is inapplicable to claims that an innocent prisoner is incarcerated. None of those cases views the evidence through the lens of 2254(e), and they discuss equitable exceptions to the strictures of AEDPA and predecessor statutes to fulfill the promise that "habeas corpus cuts through all forms and goes to the very tissue of the structure. It comes in from the outside, not in subordination to the proceedings, and although every form may have been preserved, opens the inquiry whether they have been more than an empty shell."[20]

This Court will therefore not defer to Judge Richette's PCRA opinion. In ruling on Mayer's request for an evidentiary hearing, the Court is guided by the Supreme Court's ruling on when to grant evidentiary hearings for gateway innocence claims. In that context:

> the District Court must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial. Obviously, the Court is not required to test the new evidence by a standard appropriate for deciding a motion for summary judgment. Cf. *Agosto v. INS*, 436 U.S. 748 (1978) ("[A] district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"). Instead, the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.[21]

---

decision accords with those of seven of our sister circuit courts that consider the 'last reasoned decision' of the state courts in the AEDPA context." (citing cases)). Judge Richette's PCRA decision was the last reasoned state court opinion on Mayer's guilt or innocence. And although Judge Richette's opinion was vacated on procedural grounds and would therefore ordinarily not be looked to, *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991), it makes little sense to apply that rule here: because actual innocence claims can be gateways past procedural defaults, it would be strange to hold that they can themselves be procedurally defaulted. Judge Richette's PCRA decision was the last reasoned state court opinion on Mayer's guilt or innocence.

[19] *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013); *Holland v. Florida*, 560 U.S. 631 (2010); *House v. Bell*, 547 U.S. 518 (2006); *Schlup v. Delo*, 513 U.S. 298 (1995); *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *Sawyer v. Whitley*, 505 U.S. 333 (1992); *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 11–12 (1992); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *McCleskey v. Zant*, 499 U.S. 467, 494–495 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986) *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986) (plurality opinion).

[20] *Frank v. Mangum*, 237 U.S. 309, 346 (1915) (Holmes, J. dissenting).

[21] *Schlup*, 513 U.S. at 331–32 (parallel citations omitted).

Upon review of the R&R and the whole record in this case, this Court agrees with the R&R. The Magistrate Judge properly held that Mayer did not make out a plausible enough showing of actual innocence to entitle him to an evidentiary hearing, let alone relief. Specifically, Mayer has adduced testimony and affidavits from Ociele Hawkins, Alfred Tribble, and Charles Diggs. Their testimony was unreliable: Hawkins had "a lengthy history of *crim*[*i*]*n*[*es*] *falsi*";[22] Tribble "couldn't say who killed [Copeland] or anything like that," and Judge Richette opined, "I don't know that this adds very much";[23] and Diggs's account was "hearsay within hearsay . . . from a twice-convicted murderer serving two life sentences."[24]

Therefore, this Court agrees with the analysis of the R&R and adopts its conclusions.

*C. Certificate of Appealability*

Mayer has requested a Certificate of Appealability ("COA"). The Supreme Court discussed the requirements for issuance of a COA in *Miller-El v. Cockrell*, holding that to be entitled to a COA, "a petitioner must sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[25] On the one hand, the petitioner must prove "something more than the absence of frivolity or the existence of mere good faith on his or her part,"[26] but on the other, the petitioner need not prove that some jurists necessarily would think that he was entitled to the writ, for "a claim can be debatable even

[22] R&R at 42–43.

[23] *Commonwealth v. Mayer*, No. CP 8105-2336, Hr'g Tr. 15:14–16:10 (Jan. 16, 2002).

[24] R&R at 44. Although Judge Richette granted a new trial, her analysis was surprisingly thin and conclusory. In her three page opinion, she never explained why a jury would be compelled to find Mayer not guilty. Additionally, neither party has objected to the portion of the R&R denying the actual innocence claim.

[25] 537 U.S. 322, 336 (2003) (alteration in original; internal quotation marks omitted).

[26] *Id.* at 338 (internal quotation marks omitted).

though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail."[27] Additionally, the petitioner must make "a substantial showing of the denial of a constitutional right."[28]

The request for a COA will be denied because jurists of reason cannot debate that in the Third Circuit, challenges to post-conviction process are not cognizable on federal habeas. The Court notes, however, that the Third Circuit's case law in this area is arguably in tension with certain pronouncements from the Supreme Court. Specifically, there are Supreme Court dicta in three cases arising under 42 U.S.C. § 1983 that strongly suggest the challenges are appropriate for resolution in a habeas action. These cases, *Skinner v. Switzer*,[29] *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*,[30] and *Wilkinson v. Dotson*,[31] concern challenges to state parole proceedings and state processes for access to DNA evidence. Moreover, in *Swarthout v. Cooke*, the Supreme Court in a *per curiam* opinion entertained a challenge to state parole proceedings on habeas, ruling against the habeas petitioner on the merits without discussing cognizability.[32]

Like PCRA actions, the proceedings at issue in *Skinner*, *Osborne*, *Wilkinson*, and *Swarthout* occur after a conviction becomes final and are not mandated by the federal constitution. And each of the § 1983 cases framed the question presented in a way that implied that the claims would have been cognizable in a habeas action. *Skinner* asked, "May a convicted state prisoner seeking DNA testing of crime-scene evidence assert that claim in a civil rights

---

[27] *Id.*

[28] *Id.* at 336.

[29] 131 S. Ct. 1289 (2011).

[30] 557 U.S. 52 (2009).

[31] 544 U.S. 74 (2005).

[32] *Swarthout v. Cooke*, 131 S. Ct. 859 (2011).

action under 42 U.S.C. § 1983, *or is such a claim cognizable in federal court only when asserted in a petition for a writ of habeas corpus* under 28 U.S.C. § 2254?"[33] Similarly, *Osborne*'s discussion of the background to the case implies that challenges to state process for accessing DNA evidence are cognizable in federal habeas actions, noting, "While Osborne's claim falls within the literal terms of § 1983, we have also recognized that § 1983 must be read in harmony with the habeas statute."[34] And *Wilkinson* framed the case as follows, "Two state prisoners brought an action under 42 U.S.C. § 1983 claiming that Ohio's state parole procedures violate the Federal Constitution. The prisoners seek declaratory and injunctive relief. The question before us is whether they may bring such an action under Rev. Stat. § 1979, 42 U.S.C. § 1983, the Civil Rights Act of 1871, *or whether they must instead seek relief exclusively under the federal habeas corpus statutes.*"[35]

There may be an assumption underlying *Skinner*, *Osborne*, and *Wilkinson* that challenges to state proceedings that occur after a conviction becomes final and that are not mandated by the federal constitution are cognizable both on habeas and under § 1983. And the Supreme Court might not have reached the merits in *Swarthout* if the petitioner's claims were not reviewable by a habeas court. At the same time, this Court cannot hold that these four Supreme Court cases implicitly overruled *Lambert* and *Hassine*. None of them squarely faced the question of

---

[33] 131 S. Ct. at 1293 (emphasis added).

[34] 557 U.S. at 66. *Osborne* did not hold one way or the other on whether the challenge was cognizable under § 1983, but in several places throughout the opinion, the Supreme Court suggests that the parties and the lower courts believed the claims were at a minimum cognizable on habeas. *Id.* at 60–66. ("The District Court first dismissed the claim under *Heck v. Humphrey,* 512 U.S. 477 (1994), holding it 'inescapable' that Osborne sought to 'set the stage' for an attack on his conviction, and therefore 'must proceed through a writ of habeas corpus.'" (parallel citations omitted); "We granted certiorari to decide whether Osborne's claims could be pursued using § 1983 . . . ."; "The State insists that Osborne's claim must be brought under 28 U.S.C. § 2254, which allows a prisoner to seek 'a writ of habeas corpus . . . on the ground that he is in custody in violation of the Constitution.'").

[35] 544 U.S. at 76 (emphasis added).

cognizability, which is not jurisdictional;[36] none of them concerned PCRA petitions or other states' equivalent processes; and the Third Circuit adhered to *Lambert* and *Hassine* in 2007 and 2008, after *Wilkinson* was decided.[37] Because the Third Circuit's case law is binding on this court and is clear that Mayer's claims are not cognizable, the Court is convinced that reasonable jurists could not find it debatable whether the petition should have been resolved in differently.

Additionally, a COA shall not issue on any subject related to Mayer's actual innocence claim. Although jurists of reason could certainly debate the precise contours of the interaction between AEPDA and freestanding claims of actual innocence, no reasonable jurist would conclude that Mayer's proffered evidence can climb the bar for a hypothetical freestanding actual innocence claim, a hurdle even higher than the "supremely high" one posed by *Schlup*.[38]

Therefore, the R&R's recommendation not to issue a COA is approved and adopted.

## III. Conclusion

For the foregoing reasons, the Report and Recommendation is approved and adopted.

An appropriate Order follows.

---

[36] *Cf. Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy."); *United States v. Fung*, 935 F.2d 276, Mem. at 2 (9th Cir. 1991) ("Having established jurisdiction, we hold that Fung has failed to identify any error cognizable under a writ of habeas corpus."). Although one distinguished judge has expressed the opinion that cognizability is jurisdictional, *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 1009 (9th Cir. 2012), ("Just because someone in custody files a document styled 'habeas petition' doesn't mean a federal court has jurisdiction to entertain it. Instead, the petitioner must allege a type of claim cognizable on habeas.") (Kozinski, J., dissenting), this Court believes that cognizability is analogous to stating a claim on which relief may be granted and therefore failing to state a cognizable claim does not necessarily fail to invoke the Court's jurisdiction. *Cf. id.* at 1015 ("Petitioning for the Great Writ, like filing most lawsuits, requires a cognizable cause of action.") (Kozinsky, J., dissenting).

[37] *Thomas v. Miner*, 317 F. App'x 113, 115 (3d Cir. 2008); *Grundy v. Pennsylvania*, 248 F. App'x 448, 451 n.2 (3d Cir. 2007).

[38] *Sistrunk v. Rozum*, 674 F.3d 181, 192 (3d Cir. 2012).